UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at LONDON

CIVIL ACTION NO. 05-569-KKC

GREAT AMERICAN INSURANCE COMPANY
of NEW YORK,                                                                                           PLAINTIFF,

vs.                                    **OPINION AND ORDER**

BROCK CONSTRUCTION COMPANY, INC.,
FCC EQUIPMENT FINANCING, INC.,                                                    DEFENDANTS.

\* \* \* \* \* \* \* \*

This matter is before the Court on Cross Motions for Summary Judgment [Rec. Nos. 45, 53, and 56].

**I. FACTUAL BACKGROUND**

Great American Insurance Company of New York ("Great American") issued an insurance policy to Brock Construction Company, Inc. ("Brock Construction") covering certain pieces of equipment, including a Moxy dump truck. [Rec. No. 1, Complaint, pg. 2]. On or about January 1, 2005, the Moxy dump truck was destroyed by fire. Following the fire, Brock Construction notified Great American of the loss and pursued a claim for coverage under the insurance policy. *Id*. at 3. FCC Equipment Financing, Inc. ("FCC") loaned money to Brock Construction to purchase the Moxy dump truck and has also asserted a claim for coverage against Great American.

The parties agree that the fire that destroyed the Moxy dump truck was intentionally set. [Rec. No. 5, Answer, pg. 3]. Great American brought this action seeking a declaration that it has no obligation to pay the claims brought by Brock Construction and FCC. Great American suspects that Boyd Brock ("Brock"), owner of Brock Construction, intentionally set the fire himself. Great

American argues that coverage is precluded according to the terms of the policy because Brock failed to submit a timely sworn proof of loss, failed to produce requested documents, and misrepresented material facts during the course of the investigation.

In accordance with the insurance policy provisions, Brock submitted to an Examination Under Oath ("EUO"). During the EUO, Great American alleges that Brock made material misrepresentations including, failing to disclose previous litigation and previous insurance claims.

Brock Construction and FCC filed counterclaims against Great American alleging that they are entitled to coverage under the insurance contract and that Great American acted in bad faith in denying the claim.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id*. at 322-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot

rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id*.

### III. ANALYSIS

#### A. Insurance Coverage

Since Brock's insurance policy was issued in Kentucky, for a Kentucky company, its interpretation is governed by Kentucky law. Kentucky law provides that "an insurance policy is a contract, and insofar as it does not contravene the law any recovery against the insurance company is governed solely by its terms." *State Farm Mut. Ins. Co. v. Fireman's Fund Am. Ins. Co.*, 550 S.W.2d 554, 557 (Ky. 1977). The interpretation of an insurance policy is a question of law and the court must liberally construe the contract with all doubts resolved in favor of the insured. *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. Ct. App. 2005).

### 1. Failure to Submit a Timely Proof of Loss

Great American asserts that it has no obligation to pay Brock's claim because he failed to timely submit a sworn proof of loss and failed to produce certain documents requested by Great American. The insurance policy requires an insured to comply with the following duties in the event of loss [Rec. No. 1, Exhibit A, Business Insurance Policy, pg. 12]:

6. As often as may be reasonably required permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.
7. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including the insured's books and records. In the event of an examination, an insured's answers must be signed.
8. Send us a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
9. Immediately send us copies of any demands, summonses or legal papers received in connection with the claim or suit.
10. Cooperate with us in the investigation or settlement of the claim.

Brock's policy further provides that an action may not be brought against Great American unless "there has been full compliance with all the terms of this Coverage Part . . . ." [Rec. No. 1, Exhibit A, Business Insurance Policy, pg. 14].

This loss occurred on January 1, 2005. An affidavit made by the claims investigator assigned to Brock's claim states that shortly after the loss, Great American requested a sworn proof of loss from Brock. [Rec. No. 45, Exhibit B, Affidavit of Bohlen]. In the affidavit, the investigator states that on February 18, 2005, Brock submitted a signed but blank proof of loss and after being advised that that the proof of loss was inadequate, Brock submitted a forged proof of loss. Brock admits that he did not sign the second proof of loss but maintains that June Mills ("Mills"), bookkeeper for Brock Construction, signed Brock's name with his permission. [Rec. No. 45, Exhibit A, Depo. of

4

Brock, pg. 65]. Mills, however, denies having done so. [Rec. No. 45, Exhibit D-1, June Mills EUO pg. 42-43]. Finally, on September 20, 2005, Brock submitted a completed and properly executed proof of loss. [Rec. No. 45, Exhibit A, Depo. of Boyd Brock, pg. 69].

In *American Centennial Ins. Co. v. Wiser*, 712 S.W.2d 345, 346 (Ky. Ct. App. 1986), the insured brought an action against the insurer for damages under an insurance policy. The court held that the insured's failure to comply with the proof of loss provision in the policy precluded coverage. *Id*. at 347. *See also One Beacon Ins. Co. v. Chiusolo*, 2007 WL 1728707 (E.D. Ky. 2007) ("Chiusolo does not dispute that the sworn proof of loss was submitted more than sixty days after the December 21, 2004, request. Consistent with the holding of the Kentucky Court of Appeals in *American Centennial*, Chiusolo's failure to submit a sworn proof of loss within sixty days of One Beacon's request, as required by the Policy, bars coverage as a matter of law.").

The insurance policy required that Brock submit a signed, sworn proof of loss within sixty days of Great American's request. The policy further provided that no action could be brought against Great American unless the insured fully complied with the terms of the policy. There is no dispute that Great American did not receive a properly signed and sworn proof of loss from Brock within sixty days of such request. Brock argues that the proof of loss forms were inadequate because the forms did not include a fraud warning, as required by Kentucky law, and did not request any specific information. Brock argues that these facts raise a jury question as to whether he substantially complied with the proof of loss provision, even though he missed the sixty-day submission deadline.

Kentucky recognizes the doctrine of substantial compliance with regard to duties under insurance contracts.[1] *Westchester Fire Ins. Co. v. Gray*, 240 S.W.2d 825, 827 (Ky. 1951); *see also*

---

[1]The insurance policy at issue provides that the insured must *fully comply* with the terms of the policy. Kentucky law provides that "an insurance policy is a contract, and insofar as it does not contravene the law any recovery against the insurance company is governed solely by its terms." *State Farm Mut. Ins. Co.*, 550 S.W.2d at

*Lewis v. State Farm Fire and Cas. Co.*, 2000 U.S. App. LEXIS 31951, at *8 (6th Cir. 2000). If Brock's actions, under these circumstances, are such that he "substantially complied" with the proof of loss provision, the sixty-day deadline will not operate to bar his claim.

It is clear, however, that Brock's acts cannot possibly be considered "substantial compliance" with the proof of loss provision. Brock first submitted a blank proof of loss, then follow this with an unsigned proof of loss. Neither proof of loss complied with the policy terms. Great American requested the proof of loss shortly after the January 1 fire. Great American did not receive a signed, sworn proof of loss, as required by the terms of the policy, until September 20, eight months after the fire and well after the sixty-day deadline. The policy at issue here contains similar language to the policy in *American Centennial*. Brock cannot be said to have substantially complied with the policy provisions. Brock's failure to submit a timely proof of loss precludes coverage according to the terms of the policy.

### 2. Failure to Produce Documents

Great American also asserts that it has no obligation to pay under the terms of the policy because Brock failed to produce certain documents requested by Great American. This failure, argues Great American, means that Brock has not complied with the insurance policy provisions requiring Brock to "permit [Great American] to inspect the property proving the loss or damage and examine [Brock's] books and records," and to "[c]ooperate with [Great American] in the investigation or settlement of the claim." [Rec. No. 1, Exhibit A, Business Insurance Policy, pg. 12].

In a letter to Brock dated March 31, 2005, Great American notified Brock that it was conducting an investigation into Brock's insurance claim. [Rec. No. 45, Exhibit A- Part 2, pg. 19].

---

557. However, for purposes of this motion, the Court will assume that the doctrine of substantial compliance is applicable.

The letter listed the duties in the event of loss and requested that Brock bring certain documents with him to the EUO. Documents specifically requested include: (1) police reports relating to the vehicle loss; (2) title and registration documents; (3) insurance documents; (4) receipts and other purchase documents; (5) copies of loans and promissory notes for the last five years; (6) all correspondence with any bank or creditor concerning loans or accounts for past five years; (7) copies of checking account or other accounts; (8) cell phone account and call records for the past six months; (9) tax returns for the past five years; (10) credit card statements for the past six months; (11) financial statements for the past five years; and (12) copies of any contracts with coal companies for the past five years. In a May 19, 2005 letter sent to Brock's attorney, Great American once again requested that Brock bring the documents to his EUO. [Rec. No. 45, Exhibit F].

At his EUO, Brock produced only tax returns, a lease agreement for a Moxy truck, and a time sheet for Brock Construction. [Rec. No. 45, Exhibit A-Part 2, pgs. 21-43; Exhibit A - Part 3; Exhibit A - Part 4]. Following Brock's failure to produce the documents at his EUO, Great American sent another letter to Brock's attorney requesting that the missing documents, along with additional documents, be produced at Mills' EUO. Great American concedes that some of these documents were eventually produced, however, other documents were never obtained from Brock, including cell phone records for the days surrounding the fire, correspondence and pleadings regarding the lawsuit against Brock, documents relating to the condition of the Dump Truck, 2005 tax returns, and certain bank statements.

Brock argues that the insurance policy only requires him to allow Great American to "inspect the property proving the loss or damage and examine ... books and records." [Rec. No. 1, Exhibit A, Business Insurance Policy, pg. 12]. Thus, Brock reasons, he is not required to produce the additional requested documents. Brock further argues that he signed a broad release allowing Great American

to obtain Brock's financial records. Brock asserts that these acts mean that he substantially complied with these provisions in the insurance policy, and that his claim is therefore not barred for failure to comply with the provisions.

As noted earlier, an insurance claim is not barred for lack of compliance with policy provisions if the claimant substantially complies with these provisions. *Westchester Fire Ins. Co. v. Gray*, 240 S.W.2d 825, 827 (Ky. 1951). "In general, substantial compliance means that a party has '[c]ompli[ed] with the essential requirements, whether of a contract or of a statute.' " *Charter Oak Fire Ins. Co. v. Coleman,* 273 F. Supp. 2d 903, 908 (W.D. Ky. 2003) (quoting *In re Eagle-Picher Indus., Inc*., 285 F.3d 522, 525 n.3 (6th Cir. 2002)). Under these circumstances, the Court holds that Brock did not substantially comply with the applicable policy provisions.

Great American was conducting an investigation into Brock's insurance claim. It discovered that the fire was intentionally set and suspected that Brock set the fire himself. Brock failed to produce many requested documents that would be relevant to Great American's investigation into the cause of the fire. "The purpose of a cooperation clause is to enable the insurer to obtain relevant information concerning the loss while the information is fresh, to enable it to decide upon its obligations, and to protect itself from fraudulent and false claims." *Id*. at 908-909 (quoting COUCH ON INSURANCE § 199.4).

Brock does not dispute that he did not produce all of the requested documents. He instead argues that Great American could have used the broad financial release that Brock signed to obtain the records on its own, without Brock's assistance. However, attempting to pass responsibility to Great American to obtain needed records, as Brock essentially did with this release, is not cooperation. The policy unquestionably requires the insured to cooperate with the claim investigation. Great American requested specific documents, and Brock failed to produce them when

he was clearly able to do so. Brock, not Great American, is in the better position to obtain these documents; authorizing a broad release of documents is not sufficient cooperation where specific documents are requested that are easily capable of being produced by their holder. Brock has simply failed to show that there is a genuine issue for trial on this matter. Thus, no genuine issue of material fact remains and summary judgment on this issue is appropriate.

### 3. Material Misrepresentations

Great American asserts that Brock misrepresented a number of facts in the EUO that are material to its risk and to the investigation of Brock's claim. The insurance policy provides, in relevant part, the following:

> A. Concealment, Misrepresentation or Fraud
>
> This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:
>
> 1. this Coverage Part;
> 2. this Covered Property;
> 3. your interest in the Covered Property; or
> 4. a claim under this Coverage Part.

[Rec. No. 1, Exhibit A, Business Insurance Policy, pg. 14].

In determining whether a misrepresentation is material, good faith on the part of the insured is irrelevant. *Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 943 (6th Cir. 1997). "[A] misrepresentation is material if it materially affects the insurer's risk or the hazard assumed by the insurer." *Id*. (internal quotation marks omitted).

In response to the question of whether Boyd Brock or Brock Construction had experienced prior fire losses, Brock answered "no." [Rec. No. 47, Response, Exhibit 2, EUO of Boyd Brock, pg. 59]. Brock went on to explain that he had reported a prior theft loss of a Dodge pick up truck. *Id*. However, Brock's response was contradicted by Mills, who testified under oath that an insurance

claim was made in 2001 on a Jeep owned by Brock Construction which caught fire while it was parked at the home of a Brock Construction employee. [Rec. No. 45, Exhibit D-1, June Mills EUO pg. 31; Rec. No. 47, Response, pg. 15].

During the EUO, in response to a question of whether Brock had ever been involved in a lawsuit, Brock responded that he had not been involved in any lawsuit other than a bankruptcy proceeding. [Rec. No. 47, Exhibit 2, EUO of Boyd Brock, pg. 10]. Brock's statement was again contradicted by Mills who testified that a suit had been filed against Brock, in which the plaintiff received a judgment against Brock regarding a Moxy truck which had been rented and did not work. [Rec. No. 45, Exhibit D-1, June Mills EUO pg. 61]. Mills testified that she gave all communications concerning the lawsuit to Brock. *Id*. at 102. At his deposition, Brock stated that he could not remember when he found out about the lawsuit, indicating that he may not have known about the lawsuit at the time of the EUO.[Rec. No. 45, Exhibit A, Depo. of Boyd Brock pg. 53]. The lawsuit was filed against Brock in November 2004. A default judgment was entered against Brock on January 5, 2005. The EUO was conducted in May 2005. Brock does not dispute that he eventually became aware of the lawsuit, however, he argues that he does not remember if he knew about the lawsuit at the time of his EUO.

Fraud provisions such as the one contained in the insurance policy at issue have been held valid in Kentucky so as to void an insurance policy if the insured intentionally misrepresents material facts. *Home Ins. Co. v. Hardin*, 528 S.W.2d 723, 725 (Ky.1975); *see also Baymon v. State Farm Ins. Co.*, 2006 WL 2850262 (W.D. Ky. 2006) (unpublished).

As discussed above, Brock made misrepresentations regarding prior fire losses and prior lawsuits. Brock argues that the issue of materiality cannot be decided on summary judgment. However, the issue of materiality is "a mixed question of law and fact." *TSC Indus., Inc. v.*

*Northway, Inc.*, 426 U.S. 438 (1976). Certainly, this information would have been material to the investigation of Brock's insurance claim on the Moxy dump truck. The fire was intentionally set. Brock's statements were material to eliminating or identifying Brock as the arsonist.

      Brock argues that the material misrepresentations must be intentional and the question of whether or not the misrepresentations were intentional is a question for the jury. Great American argues that the insurance policy at issue does not require that material misrepresentations be made intentionally; instead, the policy requires intent only when dealing with concealment of facts. The Court does not agree with Great American's interpretation of the insurance policy in this regard.

      The policy provides that the contract is "void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time . . . ." [Rec. No. 1, Exhibit A, Business Insurance Policy, pg. 14]. The Court finds that the language in the insurance policy requires a showing of intent relating to concealment and/or misrepresentation. "Terms of insurance contracts have no technical meaning in law and are to be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." *Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005) (quoting *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991); see *Tri-State Ins. Co. of Minn. v. H.D.W. Enters.*, 180 F. Supp. 2d 1203, 1216-17 (D. Kan. 2001) ("Tri-State appears to tacitly contend that the term "intentionally" as used above modifies only the verb "conceal," and not the verb "misrepresent." Such a construction would permit the insurance company to void the contract upon a showing of intentional concealment, unintentional misrepresentation or intentional misrepresentation. No reason for such a distinction has been alleged or is apparent to the court.").

Great American cites to a number of cases in this circuit in which the court did not require a finding of intent with regard to material misrepresentations. Many of the cases concern insurance policies which contain different or additional language than the policy at issue in this case. In *Interstate Insurance Group v. Musgrove*, 11 Fed. Appx. 426 (6th Cir. 2001) (unpublished), the Sixth Circuit affirmed the district court's decision granting summary judgment in favor of the insurer. *Id.* at 426. However, the court relied on language in the insurance policy voiding insurance coverage if the insured "made false statements" relating to the insurance coverage. *Id.* at 428. The court determined that the insured had made false statements and thus coverage was void according to the terms of the policy. *Id.* This particular provision in the insurance policy did not require intent on the part of the insured. *Id.* at 427.

The other cases Great American cites are also inapplicable to its argument that intent is not required for Brock's misrepresentations. In *Baymon*, 2006 WL 2850262, the insurance policy at issue provided that coverage would be void if the insured "intentionally concealed or misrepresented any material fact or circumstance" relating to the insurance. *Id.* at *1. The court found that the insured did in fact intentionally misrepresent facts. *Id.* at *2. Thus, the policy was void according to its terms. *Id.* In *One Beacon Insurance Co. v. Chiusolo,* 2007 WL 1728707 (E.D. Ky. 2007) (unpublished), the court granted summary judgment for the insurer, finding that the insured made material misrepresentations in his insurance application. *Id.* at *3. The court did not find that the misrepresentations were intentional. However, the insurance policy contained language that voided coverage in the event that the insured had "intentionally concealed or misrepresented any material fact or circumstance . . . or made false statements relating to this insurance." *Id.* at *2. The additional policy language about "false statements" distinguishes this case from Great American's. Finally, in *Liberty Mutual Fire Insurance Co. v. Baker*, 2006 WL 3747502 (E.D. Ky. 2006)

(unpublished), the defendant's insurance policy provided that it would be void if the insured "intentionally concealed or misrepresented any material fact or circumstance . . . or made false statements relating to the insurance." *Id.* at *2. Again, this policy had additional "false statements" language. The court held that because the insured made material misrepresentations and failed to produce certain documents, he was not entitled to coverage under the terms of the policy. *Id.* at *3-5.

It is not clear from the case law in this circuit about whether the question of intent can be decided by the Court, at this stage of the litigation. However, even assuming that the Court can decide this issue, the Court need not decide it. The issue is precluded, as the Court has already determined that Brock's failure to submit a timely proof of loss and failure to produce documents voids coverage under the Great American insurance policy.[2]

**B. FCC's Claim for Coverage as a Loss Payee**

FCC financed Brock Construction's purchase of the Moxy dump truck. Accordingly, FCC has also asserted a claim against Great American for coverage under the insurance policy. The relevant provisions of the insurance policy provide:

> For Covered Property in which both you and a Loss Payee shown above have an insurable interest, we will:
> 1. adjust losses with you; and
> 2. pay any claim for loss or damage jointly to you and the Loss Payee, as interest may appear.

[Rec. No. 1, Exhibit A, Business Insurance Policy, pg. 22].

FCC is listed in the insurance policy as the loss payee. Since the policy contains the phrase "as interest may appear," the provision is considered an open-mortgage clause. *Farmers &*

---

[2] Great American also argues that it is entitled to summary judgment with regard to its defense that Brock intentionally burned the Moxy dump truck, thereby voiding coverage. The Court has already determined that coverage is void, thus, the Court will not address the arson defense.

*Depositors Bank v. Commonwealth Ins. Co. of N.Y.*, 226 S.W.2d 773, 774 (Ky. 1950). Such a provision operates to bar coverage to the loss payee in the event the insured breaches any condition of the insurance contract. *Id*. The Court holds today that Brock's failure to submit a timely proof of loss and failure to produce documents voids coverage. These acts constitute breaches of the insurance contract. Therefore, FCC is not entitled to coverage under the insurance policy as a loss payee.

**C. FCC and Brock Construction's Bad Faith Claims**

Brock Construction and FCC have also filed bad-faith claims against Great American. Great American asserts that these claims must be dismissed because coverage is void according to the terms of the policy. The Supreme Court of Kentucky has held that "[a]bsent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute." *Davidson v. Am. Freightways, Inc*., 25 S.W.3d 94, 100 (Ky. 2000). Since the Court has determined that Great American has no contractual obligation to pay under the insurance policy, the bad-faith claims must be dismissed.

**IV. CONCLUSION**

Accordingly, **IT IS ORDERED** as follows:

(1) Great American's Motion for Summary Judgment [Rec. No. 45] is **GRANTED**;

(2) Brock Construction's Motion for Summary Judgment regarding the arson defense [Rec. No. 53] is **DENIED** as **MOOT**;

(3) Great American's Motion for Summary Judgment regarding the arson defense [Rec. No. 56] is **DENIED** as **MOOT**;

(4) Brock Construction and FCC's Counterclaims are **DISMISSED**;

(5) judgment will be entered contemporaneously with this opinion and order in favor of

Great American.

Dated this 28th day of September, 2007.

Signed By:
*Karen K. Caldwell*   KKC
United States District Judge